## RECONSTRUCTION FINANCE CORP.

### v.

## McCARTHY BROS.

### No. 32695.

United States District Court,
N. D. California, S. D.

Nov. 24, 1953.

Lloyd H. Burke, U. S. Atty., William B. Spohn, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Joseph C. Haughey, San Francisco, Cal., for defendant.

GOODMAN, District Judge.

On November 23, 1945 the Stabilization Administrator of the Office of War Mobilization and Reconversion announced his finding that "in order to obtain adequate supplies of green coffee without increasing coffee prices to the consumer or resuming coffee rationing, it is necessary to provide a temporary program for subsidizing imports of green coffee as an emergency measure to avoid a critical shortage of coffee for domestic civilian consumption." To implement his finding, the Administrator authorized the Reconstruction Finance Corporation, a corporation chartered and wholly owned by the United States, to establish such a program. Directive 87, 10 F.R. 14450.

Pursuant to the program which it initiated, R.F.C. entered into a contract with defendant McCarthy Bros. for the importation of green coffee in return for a subsidy of three cents a pound. The contract provided that R.F.C. should be reimbursed for any subsidy paid to defendant to the extent that defendant's coffee inventory might thereafter increase in value as a result of the removal or increase in the OPA ceiling prices on coffee.

OPA ceiling prices on coffee were removed from July 1, 1946 to July 25, 1946, when they were re-instated. Accordingly, on December 3, 1946, R.F.C. made a formal demand upon defendant for the repayment to R.F.C. of $2,076.09 in subsidies, the amount by which the value of defendant's inventory had allegedly increased in value as a result of the removal of the ceiling price on coffee. Thereafter, on several occasions, the most recent being March 11, 1947, defendant disclaimed, both orally and in writing, any liability to R.F.C. under the subsidy contract.

On April 9, 1953, R.F.C. filed this action against defendant to recover the

$2,076.09 allegedly owing under the subsidy contract. During the preceding six years, defendant corporation had received no communication whatsoever from plaintiff R.F.C. and had terminated its business and dissolved. Consequently, defendant now moves for summary judgment upon the ground that R.F.C.'s action is barred by laches and the California statute of limitations.

It appears from the affidavits supporting the motion and the exhibits attached thereto, that there was an honest difference of opinion between R.F.C. and defendant concerning the existence of any liability on the part of defendant under the subsidy contract. Under the circumstances, it was the duty of the proper officials of government to have diligently prosecuted R.F.C.'s claim, if they considered it to be meritorious. Their six years of procrastination may well have converted what was then a just claim into an oppressive demand.

██ But, however that may be, the claim which plaintiff asserts is a claim of the United States. The subsidy payments to defendant were made with monies belonging to the United States. The recapture provisions of the contract upon which the claim is based were intended to assure that the public funds thus expended actually aided in controlling inflation and did not become mere gratuities unjustly enriching individual citizens.

It is settled that, in the absence of Congressional consent, a claim of the United States cannot be forfeited by the neglect of officials of government. The salutary principles outlawing stale demands must bow to the sanctity of the public treasury. The same philosophy is equally applicable when the claim of the United States is asserted by a corporate agency through which the United States has chosen to exercise the functions of government. I cannot agree with the conclusion reached in R.F.C. v. Foster

Wheeler Corporation, D.C.S.D.Texas 1947, 70 F.Supp. 420, that because a Congressional waiver of sovereign immunity from suit[1] and imposition of court costs[2] has been inferred from the use of the corporate device in government, the inference is also warranted that the Congress has consented to the application of state statutes of limitation to claims asserted by government corporations.

The pertinent authorities concerning the inapplicability of the doctrine of laches or state statutes of limitation to claims of the United States and its instrumentalities are fully set forth in a recent decision of Judge Lemmon of this court made upon facts similar to those present here. United States v. Turlock Dehydrating & Packing Co., D.C.1953, 116 F.Supp. 322. It is sufficient to say that I agree with that decision. See also United States v. New York Dock Co., D.C.S.D.N.Y.1951, 100 F.Supp. 303 and R.F.C. v. Marcum, D.C.W.D.Mo.1951, 100 F.Supp. 953.

The motion for summary judgment is denied.

---

1. Keifer & Keifer v. R. F. C., 1939, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; Bauman v. Aluminum Co. of America, D. C.E.D.N.Y.1944, 58 F.Supp. 160.

2. R. F. C. v. J. G. Menihan Corp., 1941, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595.