193 F.2d 877
 TAYLOR & RICHARDS, Inc.
v.
RECONSTRUCTION FINANCE CORP.
 No. 558.
 United States Emergency Court of Appeals.
 Heard at Scranton, Pennsylvania, December 17, 1951.
 Decided January 25, 1952.
 
 John W. Bour, Scranton, Pa., James K. Peck, Scranton, Pa., on the brief, for complainant.
 E. Leo Backus, Atty., Dept. of Justice, Washington, D. C., J. Gregory Bruce, Atty., Dept. of Justice, Washington, D. C., on the brief, for respondent.
 Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.
 MARIS, Chief Judge.
 
 
 1
 The complainant seeks the review of the denial by the respondent of its protest against the invalidation of its claims for extra compensation meat subsidy in the sum of $27,703.79 for the monthly periods November, 1944 to and including June, 1945. The claims were rejected by the respondent on the ground that the complainant was disqualified under Amendment No. 2[1] to Regulation No. 3 from receiving the extra compensation subsidy allowed by the regulation to unaffiliated nonprocessing slaughterers[2] because of the fact that it was affiliated with D. W. Richards Sons, a partnership which was a processor or purveyor of meat. The fact was that during the period here involved two of the three partners of D. W. Richards Sons, each having a 37½% interest in the partnership each also owned 25% of the stock of the complainant corporation. Thus the owners of 75% of the partnership owned 50% of the stock of the complainant.
 
 
 2
 The complainant's claims were rejected by Defense Supplies Corporation, the respondent's predecessor, on June 5, 1945. The protest against the order rejecting them was not filed until December 12, 1950, more than 5½ years thereafter. The respondent urges that the complainant's right to prosecute its protest was barred by its laches in filing it. We do not agree. Section 203(a) of the Emergency Price Control Act of 1942, as amended, under which the protest was filed, expressly provides that it may be filed "at any time."[3] This was as the result of an amendment[4] which removed from the section the original limitation of 60 days for the filing of protests. Subsequently Congress reimposed a time limitation upon the filing of protests in certain types of cases.[5] Likewise a time limitation upon the filing of protests was incorporated in Section 407(a) of the Defense Production Act of 1950.[6] But no such limitation has been reimposed by Congress upon the filing of protests under Section 204(a) of the Emergency Price Control Act against subsidy regulations and orders. What Congress has expressly eliminated and failed to reimpose the respondent may not impose under the guise of applying the doctrine of laches.[7] Moreover we think that the respondent itself recognized that no such limitation existed when it sought to impose by regulation the limitation that all protests must be filed on or before December 15, 1950.[8] Since the complainant complied with this regulation of limitation its validity is, of course, not before us and we do not pass upon it. We cite it only to show that the respondent seemed to regard such a regulation of limitation as necessary.
 
 
 3
 The respondent also urges that this complaint, filed under Section 204(a) of the Emergency Price Control Act of 1942, as amended, is barred by Section 2401(a) of Title 28 United States Code.[9] That section can have no application here, however, even if we assume that this is a civil action against the United States. This is because by the express terms of Section 204(a)[10] a complainant's right of action[11] does not accrue under the act until his protest is denied and his action must then be commenced by filing a complaint in this court within 30 days thereafter. Thus the short statute of limitations contained in the Emergency Price Control Act itself completely eliminates the possibility of Section 2401(a) coming into operation in this field.
 
 
 4
 When we come to examine the merits of the complainant's case it becomes perfectly clear that the subsidy claims in question were rightly invalidated and that the complainant's protest against that action was properly denied. In Somerville Dressed Meat Co. v. R. F. C., Em.App.1947, 159 F.2d 716, this court held that common ownership of a 50% interest in a retail meat partnership and a 50% stock interest in the slaughterer corporation rendered the slaughterer affiliated with a processor or purveyor of meat and, therefore, disqualified it from receiving the extra compensation subsidy under Amendment No. 2 to Regulation No. 3. That case cannot be distinguished in principle from this one. Upon its authority the complaint must be dismissed.
 
 
 5
 A judgment will be entered dismissing the complaint.
 
 
 
 Notes:
 
 
 [1]
 Issued by the Defense Supplies Corporation October 30, 1943, effective November 1, 1943, 9 F.R. 1820
 
 
 [2]
 "§ 7003.14Extra compensation for non-processing slaughterers of beef — (a) Definitions. (1) `Non-processing slaughterer of beef' means an unaffiliated slaughterer as hereinafter defined who during six consecutive months of 1942, sold, and who currently sells, 98% or more, measured in dressed carcass weight, of the total beef produced from cattle slaughtered by him in all his establishments, in the form of carcasses, wholesale cuts, boneless beef or ground beef.
 "(2) `Unaffiliated slaughterer' means a slaughterer who does not own or control a processor or purveyor of meat, and who is not owned or controlled by a processor or purveyor of meat * * *.
 "(4) `Own or control' means to own or control directly or indirectly a partnership equity or in excess of ten percent of any class of outstanding stock or to have made loans or advances in excess of five percent of the other person's monthly sales." 9 F.R. 1820.
 
 
 [3]
 
 "Procedure
 "Sec. 203. (a) At any time after the issuance of any regulation or order under section 2, * * * any person subject to any provision of such regulation, order, or price schedule may, in accordance with regulations to be prescribed by the Administrator, file a protest specifically setting forth objections to any such provision and affidavits or other written evidence in support of such objections. * * *" 58 Stat. 638.
 See Utah Junk Co. v. Porter, 1946, 328 U.S. 39, 66 S.Ct. 889, 90 L.Ed. 1071; Charles R. Krimm Lumber Co. v. Turney, Em.App.1948, 168 F.2d 72.
 
 
 [4]
 Act of June 30, 1944, c. 325, Sec. 106, 58 Stat. 638
 
 
 [5]
 Act of July 30, 1947, c. 361, 61 Stat. 619:
 "Section 203(a) of the Emergency Price Control Act of 1942, as amended, is amended by striking out the period at the end of the first sentence thereof, inserting a comma, and adding the following new material: `Provided, however, That a protest setting forth objections to any provisions of such regulation, order, or price schedule with respect to which responsibility was transferred to the Department of Commerce by Executive Order 9841 may not be filed more than one hundred and twenty days after issuance of such regulation, order, or price schedule or sixty days after the enactment of this amendment, whichever is the later.'"
 
 
 [6]
 Defense Production Act of 1950, c. 932, 64 Stat. 807:
 "Sec. 407. (a) At any time within six months after the effective date of any regulation or order relating to price controls under this title, or, in the case of new grounds arising after the effective date of any such regulation or order relating to price controls, within six months after such new grounds arise, any person subject to any provision of such regulation or order may, in accordance with regulations to be prescribed by the President, file a protest specifically setting forth objections to any such provision and affidavits or other written evidence in support of such objections. * * *" 50 U.S.C.A.Appendix, § 2107 (a).
 
 
 [7]
 In Charles R. Krimm Lumber Co. v. Turney, Em.App.1948, 168 F.2d 72, 73, the respondent dismissed protests on the ground of laches. This court set aside the order dismissing the protests, saying: "It is certainly not true as a general proposition, that an administrative agency has inherent discretionary power to decline to perform a statutory function, where the application for administrative action, though made within the statutory time limit, has been unnecessarily delayed and as a result of the delay the administrative agency now deems the performance of the administrative function to have become unduly burdensome, by reason of reduction of staff or otherwise. Such a discretionary power may, of course, be conferred by legislative act. But, in the case before us, we have been unable to find any statutory warrant for the asserted power, either expressly or by fair implication."
 
 
 [8]
 R. F. C. Regulation No. 11, effective September 14, 1950, 15 F.R. 6193
 
 
 [9]
 "§ 2401. Time for commencing action against United States
 (a) Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases."
 
 
 [10]
 "Any person who is aggrieved by the denial or partial denial of his protest may, within thirty days after such denial, file a complaint with the Emergency Court of Appeals * * *." 50 U.S.C.A.Appendix, § 924(a)
 
 
 [11]
 For a discussion of the distinction between right of action and cause of action see McMahon v. United States, 3 Cir., 1950, 186 F.2d 227, 230, affirmed 342 U.S. 25, 72 S.Ct. 17